## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     No. CR-22-325-R |
| | ) |
| CAMERON WATKINS, | ) |
| | ) |
| Defendant. | ) |

## ORDER

On December 13, 2022, the Court heard argument regarding Defendant Cameron Watkins's Motion to Suppress Evidence (Doc. No. 32). At the conclusion of that hearing, the undersigned ordered the parties to submit supplemental briefing addressing new arguments that had been made during the hearing and the question of good faith, and the parties have complied. (*See* Doc. Nos. 48, 51). Upon consideration of the filings, the Court DENIES Defendant's Motions to Suppress Evidence.

In the early morning hours of October 8, 2021, Oklahoma City Police Department officers arrived at the OakTree Inn and Suites—a motel featuring exterior corridors with direct car-to-room access—to investigate an alleged carjacking that had taken place hours earlier in the motel's parking lot. (Doc. No. 32, at 1; Doc. No. 37-2, at 5). While visiting with motel staff members, officers were informed that an individual matching the suspect's description was in Room 231. When officers arrived at Room 231, Officer Michael McNally was able to observe through a window an individual matching the suspect's description as well as a "black semi-automatic handgun with an extended magazine lying

next to the suspect." (Doc. No. 37, at 2). That individual was later identified as Defendant Cameron Watkins, a convicted felon. (*See* Doc. No. 1, at 5-6). Among other counts, Watkins is charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). (*See* Doc. No. 44). His Motion to Suppress Evidence concerns the handgun, extended magazine, and other evidence recovered by local law enforcement. (*See* Doc. No. 37-1, at 7).

Defendant contends that the evidence should be suppressed because: (1) Officer McNally conducted an illegal search when he observed Defendant and the handgun through an exterior window; (2) the search warrant—issued after Defendant's arrest—was based on Officer McNally's illegal search and material misrepresentations to the court; and (3) the good faith exception should not apply to justify the deficient search warrant because the warrant's affiant was grossly negligent in obtaining the warrant. (Doc. No. 32; Doc. No. 48, at 4). Plaintiff argues, in part, that the evidence should not be suppressed because Officer McNally legally observed Defendant and the handgun while standing in a publicly accessible hallway. (Doc. Nos. 37, at 6-8; Doc. No. 51, 7-8).

There is little doubt that officers acted reasonably in responding to Room 231. They were investigating a carjacking that had taken place in the motel's parking lot, and motel staff members had directed them to the room because an individual matching the suspect's description was inside. Even if the Court assumes that Defendant had a reasonable expectation of privacy inside the motel room, the Court is satisfied that Officer McNally did not perform an illegal search in violation of the Fourth Amendment. The Tenth Circuit Court of Appeals has concluded that "no Fourth Amendment search occurs if a police

officer makes observations while in a public place . . . even if the objects he observes lie within an area protected by the Fourth Amendment." *Reeves v. Churchich*, 484 F.3d 1244, 1254 (10th Cir. 2007) (citing *United States v. Dunn*, 480 U.S. 294, 304 (1987)). Here, the exterior walkway leading to Room 231 was open to the public and undoubtedly used by other motel patrons and staff—officers were not required to pass through a fence or barrier to reach the room. Regardless of whether the window's curtains were completely open, or partially open, the Court finds that Officer McNally did not violate the Fourth Amendment when he looked through the window and observed Mr. Watkins and the handgun inside Room 231 because he was standing in a public place.

In contesting the veracity of the search warrant, Defendant contends that Detective Vinny Astrino misrepresented in his affidavit that an officer had observed Mr. Watkins with a handgun next to him "via an open curtain," because, in fact, the curtain was only "partially opened." (Doc. No. 33, at 2). The Court finds this distinction is immaterial because the search warrant would still have issued had Detective Astrino described the curtains as "partially open." *See United States v. Ingram*, 720 F. App'x 461, 470 (10th Cir. 2017) ("If 'a warrant would have issued in a but-for world where the attesting officer faithfully represented the facts,' then we can dismiss the contested omission as immaterial.") (quoting *United States v. Herrera*, 782 F.3d 571, 575 (10th Cir. 2015)).

Defendant alternatively asserts that the search warrant was invalid because Detective Astrino omitted from his affidavit that the victim had not positively identified Mr. Watkins when officers first showed her a photograph of a suspect. (Doc. No. 33, at 3). Plaintiff counters that Detective Astrino did not include that information in his affidavit

because the suspect in the photograph was not Mr. Watkins, but rather another individual named Lamont Montgomery. (Doc. No. 37-2, at 5; Doc. No. 43, at 10, 13, 31-32; Doc. No. 51, at 5; Doc. No. 51-3, exchange between officers from 22:00-22:30 ("we showed her Montgomery, we have not shown her Watkins")). In his affidavit, Detective Astrino states that the victim "positively identified Cameron as the male who had kidnapped her and taken the vehicle." (Doc. No. 37-1, at 4). This positive identification is documented on body camera footage (*see* Doc. Nos. 51-4, 52-6) as well as in the Oklahoma City Police Incident Report (Doc. No. 37-2, at 5). Therefore, the Court finds that Detective Astrino's omission of the initial negative identification—wherein the victim was shown a photograph of someone other than Cameron Watkins—was not a material misrepresentation to the court.

Finally, Defendant suggests that Detective Astrino acted recklessly and with gross negligence     in obtaining the search warrant because he swore "that all the information in the warrant [was] accurate," but "never interacted" with Officer McNally or read the reports. (Doc. No. 48, at 4). In the hearing, Detective Astrino was asked by Defendant's counsel:

> Q. Would you say Officer McNally is a trustworthy person?
> A. Never interacted with him.

(Doc. No. 43, at 50:1-2). This exchange does not definitively imply that Detective Astrino never had *any* interaction with Officer McNally. Rather, it could simply mean that Detective Astrino did not know McNally well enough to vouch for his trustworthiness. Nevertheless, at the Motion to Suppress Evidence hearing, Detective Astrino explained

4

that he was on the scene—hours after Mr. Watkins's arrest—when he learned that Officer

McNally had observed a handgun in Room 231:

> Long story short, there was a standoff and eventually both people inside the
> room were taken into custody. Both were transported to Oklahoma County
> jail and booked in, but no firearm at that point had been recovered when the
> two had stepped out of the apartment—or the hotel room. So as the
> investigators, we showed up on scene. Like I said, we were briefed on it, took
> description of it, and went back to the Oklahoma City police headquarters,
> drafted a search warrant for the motel room, No. 231. I went to the chambers
> of Judge Hammond and presented the search warrant to Judge Hammond.

(Doc. No. 43, at 42:21 – 43:7). When asked whether he "principally rel[ied] on testimony

and reports from officers at the scene," Detective Astrino answered "[c]orrect." (Doc. No.

43, at 45:17-19). On cross-examination, defense counsel questioned Detective Astrino as

to whether he relied on information provided by Officer McNally as the basis for the search

warrant:

> Q. Mr. McNally was purely the main determinate of who you
>    relied on for this warrant; is that correct?
> A. As far as seeing the handgun inside of the room, yes.

(Doc. No. 43, at 50: 7-10).

Under the collective knowledge doctrine, also known as the "fellow officer" rule,

the Tenth Circuit has held "that law enforcement officers may pool their information and

that reasonable suspicion is to be determined on the basis of the collective knowledge of

all the officers involved." *United States v. Hinojos*, 107 F.3d 765, 768 (10th Cir. 1997)

(citation omitted). In short, the doctrine allows the "reasonable suspicion or probable cause

of one officer [to] be imputed to the acting officer." *United States v. Pickel*, 863 F.3d 1240,

1249 (10th Cir. 2017). While it is not clear which officer, or officers, told Detective Astrino

about the gun, it is evident that Detective Astrino gathered information from the officers at the scene. There is no evidence that any officers involved in this investigation distrusted Officer McNally or had any reason to believe he was lying regarding his observation of the handgun.

At the time that Detective Astrino drafted his affidavit, officers had informed him that: (1) the individual they had arrested was Cameron Watkins; (2) Watkins was a convicted felon; and (3) a handgun had been observed next to Watkins inside Room 231. The Court is satisfied that by visiting the scene and conversing with fellow officers, probable cause was imputed to Detective Astrino in requesting the search warrant. Moreover, upon execution of the search warrant, a handgun matching the description provided by Officer McNally was located in Room 231.

Accordingly, the Court finds that the evidence seized in Room 231 is admissible against Defendant at trial. For the reasons set forth herein, Defendant's Motions to Suppress (Doc. Nos. 32, 48) and "Motion for *Franks* Hearing" (Doc. No. 33) are DENIED.

**IT IS SO ORDERED** this 18th day of January 2023.

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE